**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| **DANIEL BALDWIN**, : | |
| : | |
| Plaintiff, : | |
| : | Civ. Action No.: 16-1675 (FLW) (DEA) |
| v. : | |
| : | **OPINION** |
| **CHRISTOPHER GRAMICCIONI,** : | |
| **individually and in his official capacity,** : | |
| **and THE MONMOUTH COUNTY** : | |
| **PROSECUTOR'S OFFICE**, : | |
| : | |
| Defendants. : | |
| _____ : | |

**WOLFSON, United States District Judge:**

Plaintiff Daniel Baldwin ("Baldwin"), an African American male, alleges that his employer, defendant Monmouth County Prosecutor's Office (the "MPCO"), and his supervisor, Christopher Gramiccioni ("Gramiccioni"), the Monmouth County Prosecutor (collectively, "Defendants") have intentionally refused to promote Plaintiff to the position of Detective Sergeant on numerous occasions based on his race; instead, they have chosen to promote underqualified Caucasian officers. Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted in part as follows: (i) Plaintiff's claims against Defendants under 42 U.S.C. § 1981 are dismissed; (ii) Plaintiff's claim against Gramiccioni, in his official capacity, under 42 U.S.C. § 1983 is dismissed; (iii) Plaintiff's claims against Defendants under 42 U.S.C. § 1985 are dismissed; (iv) Plaintiff's claims against Defendants under 42 U.S.C. § 1986 are dismissed; and (v) Plaintiff's claim against Gramiccioni, in both his individual and official

1

capacities, under Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e, et seq. ("Title VII") is dismissed.   The following claims remain: (i) Plaintiff's claims against the MPCO and Gramiccioni, in his individual capacity, under 42 U.S.C. § 1983; (ii) Plaintiff's claim against the MPCO under Title VII; and (iii) Plaintiff's claims against Defendants under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-3, et seq. ("NJLAD").

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Before he started his employment with the MPCO, Plaintiff was a law enforcement officer with the Hillside Police Department for fourteen years, and he subsequently was employed as a detective at the Essex County and Somerset County Prosecutor's Offices.   Compl., ¶ 6.   As a detective, Plaintiff served in various specialized units, including homicide, narcotics and organized crime.   Id.   With respect to his educational background, Plaintiff holds a Bachelor of Arts degree from Kean University in political science with a concentration in criminal justice, and he earned a Masters of Administrative Science degree from Fairleigh Dickenson University, where he graduated with grade point average of 3.70.   Id. at ¶ 7.   In addition, Plaintiff also received a post-graduate certificate in Human Resources Administration from Fairleigh Dickenson University.   Id.

Plaintiff is presently an adjunct professor in the Department of Criminal Justice at both Monmouth University and Brookdale Community College.   Id. at ¶ 9.   Plaintiff has attended various law enforcement training courses throughout his career, such as the New York City Homicide Training Course, the Drug Enforcement Agency ("DEA") High Intensity Drug Trafficking Course and the New York and New Jersey DEA High Risk Entry Course.   Id. at ¶ 8. Moreover, Plaintiff alleges that, throughout his career, he has received numerous awards and

---

[1] On this motion, I will take all factual allegations as true.

decorations, including, <u>inter alia</u>, the "Top Cop" award from the National Association of Police Organization, the Association Achievement award from the International Homicide Investigators Association and the "Officer of the Month" award from the National Law Enforcement Officers Memorial Fund.  <u>Id.</u> at ¶ 9.

Plaintiff alleges that he began his employment with the MCPO in October 2006, <u>see</u> <u>id.</u> at ¶ 6, and he is currently a detective assigned to the Trial Support Unit.  <u>Id.</u> at ¶ 39.  While working for the MCPO, Plaintiff claims that he "has met or exceeded his performance expectations," <u>see</u> <u>id.</u> at ¶ 10, but he complains that he "has been repeatedly passed over from promotion to the rank of Detective Sergeant," which is considered a supervisory position.  <u>Id.</u> at ¶¶ 11-12.  According to Plaintiff, he "has been denied promotion to the rank of Detective Sergeant while lesser qualified Caucasian males and Caucasian females have been promoted to the rank of Detective Sergeant as well as other supervisory level positions."  <u>Id.</u> at ¶ 13.

Plaintiff states that, at all relevant times, "all of the highest ranking positions [at the MPCO]... have been held by Caucasians," <u>see</u> <u>id.</u> at ¶ 26, and that "the persons holding the aforementioned officials [sic] are upper management and have the ability to make personnel decisions, including hiring, promotions, transfers and work assignments."  <u>Id.</u> at ¶ 27.  In that connection, Plaintiff alleges that "the individuals assigned to the aforementioned positions were responsible in whole or in part for the promotions that have served to discriminate against Plaintiff [] and other similarly situated African Americans."  <u>Id.</u> at ¶ 28.

Since he started working at the MPCO in 2006, Plaintiff alleges that more than twenty individuals have been promoted to the position of Detective Sergeant, <u>id.</u> at ¶ 14, and that "the vast majority of the aforementioned promotions were given to Caucasian males, Caucasian females and in one instance a Hispanic male."  <u>Id.</u> at ¶ 17.  According to Plaintiff, he was passed over for a

promotion to the position of Detective Sergeant in 2007, when the MPCO decided to promote Albert De'Angelis, an allegedly lesser qualified Caucasian male, to the position.  Id. at ¶ 18. Similarly, Plaintiff alleges that he "was passed over on four (4) separate occasions in 2011 in his quest for promotion to the position of Detective Sergeant, while lesser qualified and experienced Caucasian employees were promoted instead."  Id. at ¶ 19.  Plaintiff claims that the following individuals were promoted to the positon of Detective Sergeant at that time: Barry DuBrosky, Maria Reverendo, Donna Morgan, Steve Kondrup and Robert Angelini.[2]  Id.

Plaintiff asserts that, in 2012, he was again denied promotion to the rank of Detective Sergeant when the MCPO promoted the following Caucasian males to that position: Jeffrey Wilbert, Eric Singer, Michael Magiliozzo and John Dyott.  Id. at ¶ 20.  Over the next two years, Plaintiff was allegedly passed over for promotion twice; the MPCO promoted Rocco Santorsola and Michael Clancy to the position of Detective Sergeant in 2013 and 2014, respectively.  Id. at ¶¶ 21-22.  Plaintiff alleges, in 2015, that he "was once again passed over for promotion to the rank of Sergeant while lesser qualified and experienced Caucasian employees Ryan Muller was promoted to the rank of Sergeant, Walter Mazariegos, was promoted to the rank of Sergeant and George Snowden was promoted to the rank of Sergeant."  Id. at ¶ 23.

Plaintiff alleges that, on May 29, 2015, he filed a formal complaint with Kevin Burke, the Director of Human Resources at the MPCO, in connection with what he considered to be race-based disparate treatment in the promotion process.  See id. at ¶¶ 15-16, 24, 47.  According to Plaintiff, after he filed his complaint, the MPCO "took no action to promptly investigate [his] internal complaint."  Id. at ¶ 47.  Instead, Plaintiff alleges that "the matter was closed on July 24,

---

[2] Although Plaintiff alleges that he was passed over on four separate occasions in 2011, he lists five individuals that were promoted to the position of Detective Sergeant that year.

2015, in favor of the [MPCO], without Plaintiff having ever been interviewed." Id. Nevertheless, Plaintiff alleges that "[i]t was not until after [he] complained in writing of the disparate treatment in May of 2015, was an African American promoted to the position of Detective Sergeant," see id. at ¶ 15, which he alleges "was a smokescreen to cover up over nine (9) years of denials of promotions to African Americans to the position of Detective Sergeant." Id. at ¶ 16.

With respect to the racial composition of the supervising officers at the MPCO, Plaintiff alleges that "the overwhelming majority of the... superior officers are Caucasian." Id. at ¶ 29. According to Plaintiff, "eighteen (18) of the twenty-five (25) Supervisors are Caucasian, while there are only five (5) African American supervisors." Id. Plaintiff further alleges that there are thirteen (13) Detective Sergeants at the MPCO, but there are only two (2) African Americans that hold the position – one of which was promoted after Plaintiff complained to Human Resources at the MPCO. Id. at ¶ 31. In addition to the superior officers, Plaintiff alleges that "[t]he overwhelming majority of Detectives with the [MCPO] are Caucasians," explaining that "there are seventy-seven (77) detectives in total with only nine (9) African Americans." Id. at ¶ 32.

Furthermore, Plaintiff alleges that "[t]here is no test, objective rating or advancement criteria that employees are objectively compared against to determine their amenability for promotion. In addition, there is no interview process where prospective candidates compete and explain or otherwise respond to an objective process in order to determine whether or not they possess the necessary qualifications for promotion." Id. at ¶ 37. According to Plaintiff, "the process is subjective and has inured to the detriment of the Plaintiff and other similarly situated African Americans and to the benefit of Caucasians." Id. In fact, Plaintiff alleges that the MCPO has "[u]nwritten policies related to the appointment and promotion of individuals without the benefit of a competitive and objective interview process [that] has negatively impacted [] African

Americans given the fact that these appointments and/or promotions have resulted in a significant number of Caucasian males and females [being appointed and/or promoted] to the detriment of African Americans." Id. at ¶ 48.

In addition to being passed over for promotions, Plaintiff alleges that the MCPO has assigned him to the Trial Support Unit, "which is considered the least active unit..., [and, he] submits that his assignment is a way in which to minimize his work productivity and thereby severely reducing his ability to be promoted." Id. at ¶ 39. Plaintiff explains that "[t]he Trial Support Unit is commonly known to be a punishment detail and is the unit where typically older Detectives, who are near retirement, are assigned before the end of their careers." Id. Even though he is presently assigned to that unit, Plaintiff claims that he is required to serve as "an unofficial training officer" to two different Caucasian males that lack experience as law enforcement officers. Id. at ¶¶ 40, 43. Plaintiff alleges that the role of a training officer is often the job responsibility of a Detective Sergeant, "which essentially proves that while, Plaintiff was given the duties and responsibilities of a Detective Sergeant, Plaintiff, has not been rewarded with a promotion or compensation commensurate with such duties and responsibilities." Id. at ¶ 41.

Before he was transferred to the Trial Support Unit at the MCPO, "Plaintiff was assigned to the Financial Crimes Unit, a cold case homicide, and the Narcotic Unit in connection with the obtaining of a wiretap." Id. at ¶ 44. While assigned to those positons, Plaintiff claims that he "exceeded his performance expectations and received excellent evaluations." Id. Nevertheless, Plaintiff alleges that he "was removed from the Financial Crimes Unit and transferred to the Trial Support Unit and replaced by Kevin Mahoney, a Caucasian male with lesser experience and qualifications." Id. at ¶ 45. According to Plaintiff, Mahoney is the "lifelong friend" of Gramiccioni, who placed Mahoney in the Financial Crimes Units immediately after Mahoney

completed the police academy.  <u>Id.</u>  Since his removal from the Financial Crimes Unit, Plaintiff alleges that "Gramiccioni has [] assigned three other lesser qualified Caucasian males to the Financial Crimes Unit."  <u>Id.</u> at ¶ 46.

Plaintiff filed his Complaint on March 24, 2016.  In Count One, Plaintiff asserts the following claims against the MPCO: (i) violation of 42 U.S.C. § 1981; (ii) violation of 42 U.S.C. § 1983 under the 14th Amendment's Equal Protection Clause; (iii) violation of 42 U.S.C. § 1985; (iv) violation of 42 U.S.C. § 1986; (v) violation of Title VII; and (vi) violations of NJLAD.  In Count Two, Plaintiff asserts the same claims against Gramiccioni, in both his individual and official capacities, that he has asserted against the MPCO in Count One.  With respect to his claims under Title VII, Plaintiff alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 25, 2015, and that he received a Right to Sue Letter on January 29, 2016.  Compl. at ¶ 58.  On June 23, 2016, Defendants filed the present motion to dismiss.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  <u>Ashcroft v.</u>

Iqbal, 556 U.S. 662, 678 (2009).  "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.  The complaint must include "enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim.  The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (internal quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim."  Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted).  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. (internal quotation marks omitted).  Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. (internal quotation marks and brackets omitted).

### III.    DISCUSSION

While Plaintiff has opposed Defendants' motion to dismiss, he has made the following concessions in his opposition brief.  First, Plaintiff admits that his Section 1981 claims against both the MPCO (Count One) and Gramiccioni (Count Two), in both his individual and official capacities, should be dismissed.  Pl.'s Br. in Opp. at pg. 7.  In addition, Plaintiff concedes that his Title VII claim against Gramiccioni (Count Two), in both his individual and official capacities, should be dismissed.  Id. at pg. 14-15.  Accordingly, those claims are dismissed.

Finally, Plaintiff confirms that each alleged occurrence of failure to promote is a discrete discriminatory act.  As a result, with respect to his Section 1983 claims, Plaintiff concedes that the two-year statute of limitations bars all discrete acts that occurred prior to March, 24 2014.  Id. at pg. 11; see Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (stating that the statute of limitations for Section 1983 claims is the same as "the state statute of limitations period applicable to personal injury torts," which is two years in New Jersey); Freeman v. State, 347 N.J. Super. 11, 20-22 (App. Div. 2002) (stating that the statute of limitations for New Jersey state constitutional claims is two years).

In connection with his Title VII claim against the MPCO, Plaintiff admits that all discrete acts that happened prior to January 30, 2015 are barred by the 300-day statute of limitations.  Pl.'s Br. in Opp. at pg. 14; see Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001) (stating that a plaintiff must file an EEOC charge within 300 days after his or her claim of discrimination accrued under Title VII).  Relatedly, in regard to his NJLAD claims against both Defendants, Plaintiff acknowledges that all discrete act that occurred before March

24, 2014 are barred by the two-year statute of limitations.[3]  Pl.'s Br. in Opp. at pg. 15-16; see Montells v. Haynes, 133 N.J. 282, 286 (1993) (stating that the statute of limitations for NJLAD claims is two years).[4]

**a.**     **Section 1983**

In Count One, Plaintiff alleges that the MPCO has a pervasive practice that promotes intentional discrimination against Plaintiff and other African American employees during the promotion process in an effort to place underqualified and unexperienced Caucasian employees in supervisory positions instead of qualified and experienced minorities.  Plaintiff further alleges that the MPCO has not established an objective test to evaluate prospective candidates.  In Count Two, Plaintiff alleges that Gramiccioni was directly involved in the discriminatory promotion process at the MPCO.[5]

---

[3] Defendants challenge the sufficiency of the pleadings under Rule 8(a), but they do not direct their argument at any particular claim.  Rather, Defendants contend that the Court should only consider the allegations contained in paragraphs 22, 23 and 24 of the Complaint, which relate to events that occurred after March 24, 2014, since all of the other paragraphs relate to time-barred allegations that are not actionable.  Because the Court has not stricken any of the paragraphs from the Complaint, that argument is misplaced.  To the extent that these allegations provide background to Plaintiff's claims, the Court is not precluded from considering them in order to put paragraphs 22, 23 and 24 into context.  See Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (stating that, on a motion to dismiss, the court must consider the complaint as a whole to determine whether there is sufficient factual matter to state a facially plausible claim).

[4] Plaintiff makes other concessions in his opposition brief, which will be discussed, infra.

[5] Plaintiff has alleged that Gramiccioni is "an upper level manager and final decision-maker in all matters involving promotions," see Compl., ¶ 61, which has not been disputed by Defendants.  See Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (stating that, as an initial burden, a plaintiff must identify the policymaking official that is responsible for establishing either the affirmative policy or custom).  For the purpose of this motion, the Court assumes that Gramiccioni had final policymaking authority with respect to the decision to promote employees at the MPCO.

1.   **The MPCO**

In connection with Plaintiff's Section 1983 claim under the Fourteenth Amendment Equal Protection Clause,[6] Defendants argue that Plaintiff has failed to plead that the MPCO has a formal policy, procedure or a custom of racial discrimination in its promotion practices, as required under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).  Defendants contend that Plaintiff has instead only alleged that the MPCO had no test, objective rating or advancement criteria.  In addition, Defendants maintain that Plaintiff has failed to allege any law, regulation, standard or requirement mandating that the MPCO have those objective measures in place, or that such a failure to implement those measures would be evidence of a discriminatory policy or custom.

In opposition, Plaintiff argues that he has adequately stated a discriminatory policy by alleging that the MPCO had an unwritten practice relating to the appointment or promotion of individuals without the benefit of a competitive and objective interview process.  Plaintiff explains that the MPCO has not implemented formal, objectively based processes in order to further the County's practice of discrimination.  Plaintiff avers that such practice has resulted in an adverse

---

[6] It is well-established that Section 1983 provides the appropriate cause of action for all citizens injured by an abridgement of their rights guaranteed by the Federal Constitution.  Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 611 (2008); see Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law.").  In particular, the Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall… deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal quotation marks and citation omitted); see Artway v. Attorney Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996) (stating that the Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action).

impact on African Americans, who struggle to be promoted to supervisory positions at the MPCO, while inexperienced and underqualified Caucasians are being promoted instead.

A municipality may be held liable under Section 1983 only if its official policy or custom causes a constitutional injury.[7]  See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. at 658) (stating that, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.").  However, a governmental entity may not be held liable under Section 1983 for constitutional violations caused solely by its employees or agents under the principle of *respondeat superior*.  See Monell, 436 U.S. at 690; see also McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (explaining that, in Monell, "the Supreme Court established that a municipality cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of respondeat superior.").

A policy is established when a decisionmaker with final authority to create municipal policy issues an official proclamation, policy or edict.[8]  Berg v. County of Allegheny, 219 F.3d

---

[7] Although complaints alleging municipal liability under Section 1983 are not subject to heightened pleading standards, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), a plaintiff must actually "identify a custom or policy, and specify what exactly that custom or policy was," as well as "allege conduct by a municipal decisionmaker."  McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  As discussed infra, Plaintiff has satisfied these threshold requirements.

[8] In the instant matter, although Plaintiff argues that the MPCO has "unwritten policies" relating to the appointment and promotion of individuals, there are no allegations in the Complaint that Gramiccioni, who is alleged to be the final decisionmaker, promulgated an official proclamation, policy or edict that the MPCO will not promote Plaintiff or other similarly situated African American employees to supervisory positions based on their race.  Thus, Plaintiff has not alleged a Monell claim based on an established policy.  See Berg, 219 F.3d at 275.  Rather, Plaintiff's claim against the MPCO under Section 1983 is based on a custom or practice.

261, 275 (3d Cir. 2000); see Monell, 436 U.S. at 690 (stating that a municipal policy must be a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers."); see also Bielevicz, 915 F.2d at 850.  In the absence of an official policy, municipal liability can be established based on a custom or practice, which is "a given course of conduct, although not specifically endorsed or authorized by law, [that] is so well-settled and permanent as virtually to constitute law."  Bielevicz, 915 F.2d at 850; see Costantino v. City of Atl. City, 152 F. Supp. 3d 311, 319 (D.N.J. 2015) ("Liability based on a custom rather than a formal adopted policy proceeds on the theory that the relevant practice is so widespread as to have the force of law."); see also Patrick v. Great Valley Sch. Dist., 296 Fed. Appx. 258, 263 (3d Cir. 2008) ("A pervasive custom can be established by way of evidence that the relevant policymaking authorities knew of and acquiesced to the challenged practice.").

A custom can also be established when a municipal entity fails to affirmatively act.  See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).  The Third Circuit has stated that a custom may exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  Id. (alteration in the original) (internal quotation marks and citation omitted); see Connick v. Thompson, 563 U.S. 51, 61 (2011) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.") (internal quotation marks and citation omitted).  Once a policymaker possesses either actual or constructive knowledge of the custom that results in the violation of constitutional rights, the

13

failure to change course and ameliorate the obvious failings of the existing practice amounts to deliberate indifference.  See Natale, 318 F.3d at 584.

At the outset, the Court notes that it will only consider actions that occurred after March 24, 2014 in connection with Plaintiff's Section 1983 claim.  Here, although Plaintiff does not expressly allege that the MPCO had a "custom" or "practice" in his Complaint, the clear implication is that the supervisors, including Gramiccioni, allegedly intentionally discriminated against Plaintiff, and other African American employees, based on race when making promotion decisions.  To that end, Plaintiff has alleged that such discriminatory promotion practices are so pervasive and widespread that the management at the County has been able to act with impunity for close to a decade.  According to Plaintiff, it was not until he filed a formal complaint that the MPCO promoted an African American employee to Detective Sergeant, which Plaintiff characterizes as "a smokescreen to cover up over nine (9) years of denials of promotions to African Americans to the position of Detective Sergeant."  Compl., ¶ 16.  Importantly, Plaintiff asserts that the MPCO has failed to correct these obvious deficiencies in its promotion practices by not implementing an objective test or interview process to evaluate prospective candidates for promotion to the position of Detective Sergeant.  See id. at ¶ 37.  Put differently, Plaintiff alleges the MPCO made a deliberate choice not to implement an objective standard to evaluate prospective candidates for promotion so that the supervisors could continue to promote lesser qualified and experienced Caucasian employees instead of their more qualified and experienced African American counterparts.  Without the benefit of objective comparison among prospective candidates, Plaintiff asserts that the promotion process has negatively impacted him and other similarly situated African American employees because, historically, unqualified and inexperienced Caucasians have been favored for promotion to supervisory positions.  Id. at ¶ 48.

Furthermore, Plaintiff alleges that Gramiccioni was the final decisionmaker with respect to promotions at the MPCO, and that he not only possessed knowledge of this discriminatory promotion practice, but actually participated in the activities resulting in the violation of constitutional rights.  See id. at ¶¶ 61-62.  For instance, Plaintiff alleges that he was assigned to the Financial Crimes Unit, but was transferred to the Trial Support Unit, which is a less prestigious assignment, so Gramiccioni could promote Mahoney, a Caucasian and longtime friend of Gramiccioni, to the Financial Crimes Unit, even though Mahoney had only recently graduated from the police academy.  Id. at ¶ 45.  In addition, Plaintiff alleges that Gramiccioni also assigned three more underqualified Caucasian males to the Financial Crimes Unit after Plaintiff was transferred to the Trial Support Unit.[9]  Id. at ¶ 46.  When accepting his allegations as true on this motion to dismiss, Plaintiff has adequately alleged that Gramiccioni knowingly participated in the allegedly widespread custom of denying African American employees the opportunity to advance to supervisory positions, and that the MPCO permitted this type of discrimination to exist.  Finally, Plaintiff has adequately alleged that the discriminatory promotion practice, along with the failure to implement an objective test and interview process to evaluate prospective candidates, resulted in Plaintiff being deprived of the opportunity to be promoted to Detective Sergeant in both 2014 and 2015.  See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007) (stating that, in order for liability to attach, a plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation to ground municipal liability.") (internal quotations marks and citation omitted).  Accordingly, Defendants' motion to dismiss is denied as to Plaintiff's Section 1983 claim against the MPCO.

---

[9] From the Complaint, it appears that Mahoney's promotion, as well as the promotion of the other Caucasians males to the Financial Crimes Unit, occurred in 2015.

2.      **Gramiccioni**

In Count Two, Plaintiff asserts a Section 1983 claim against Gramiccioni for violation of the Equal Protection Clause of the Fourteenth Amendment.  To state a claim under that clause, the plaintiff must allege the existence of purposeful discrimination because he is a member of a protected class, and that he "received different treatment from that received by other individuals similarly situated."  Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (internal quotation marks and citation omitted); see Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 479 (D.N.J. 2009) ("Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983."). Furthermore, when an employee at a municipal entity has filed suit against his supervisor, he must allege that the defendant was personally involved in the alleged wrongdoing.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); see Ivan, 595 F. Supp. 2d at 479 ("To impose individual liability under § 1983 for equal protection violations, the defendants must have been personally, affirmatively involved in the alleged wrongdoing.").  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  See Evancho, 423 F.3d at 353.

In the instant matter, as discussed supra, Plaintiff alleges that he is an African American male who was subject to a pervasive, unwritten practice of race-based discrimination in the promotion process at the MPCO, whereby similarly situated Caucasian law enforcement officers were provided more promotion opportunities to management positions than qualified African American officers.  For instance, Plaintiff alleges that he was wrongly passed over for promotion in 2015 when Gramiccioni made the final decision to promote Ryan Muller, Walter Mazariegos and George Snowden to Detective Sergeant.  See Compl., ¶ 23.  At this preliminary stage of the

litigation, Plaintiff has alleged sufficient facts to establish a reasonable inference that he was similarly situated to his Caucasian counterparts because they were all law enforcement officers at the MPCO.  See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (stating that persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects."); see also Nittoli v. Morris Cnty. Bd. of Chosen Freeholders, No. 05-4007, 2006 WL 2077335, at *6 (D.N.J. July 24, 2006) (stating that, in the employment context, the plaintiff must allege that the similarly situated persons "share like characteristics or classifications specific to their employment status."). In addition, Plaintiff alleges that Gramiccioni was directly involved in establishing and perpetuating the discriminatory promotion practices at the MPCO.  Stated differently, Plaintiff alleges that Gramiccioni proverbially placed his thumb on the scale in order to tip the balance in favor of Caucasian employees and against Plaintiff and other African American employees at the MPCO.  Accordingly, Defendants' motion to dismiss is denied as to Plaintiff's Section 1983 claim against Gramiccioni in his individual capacity.

Furthermore, Plaintiff asserts a Section 1983 claim against Gramiccioni in his official capacity.  However, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell… local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).  Indeed, suits against government employees in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55; see Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) ("[T]he claims here, insofar as they are against the defendant officials in their official capacities, are only a duplication of the counts asserted against the [entity] itself.").  Accordingly, "it is a well-established practice in [the Third Circuit] to dismiss redundant § 1983 claims asserted against public officers in their official

capacities where a claim has also been made against the public entity that employs them." Jankowski v. Lellock, No. 13-194, 2013 WL 5945782, at *9 n.6 (W.D. Pa. Nov. 6, 2013); see Cuvo v. De Biasi, 169 Fed. Appx. 688, 693 (3d Cir. 2006) (affirming dismissal "against the officers in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them."); see also Crump v. Passaic Cnty., 147 F. Supp. 3d 249, 259 (D.N.J. 2015).  In this matter, Plaintiff's Section 1983 claim against Gramiccioni in his official capacity is redundant of his Section 1983 claim against the MPCO, since Plaintiff has asserted, and adequately plead, a Section 1983 claim against the MPCO itself. See Graham, 473 U.S. at 167 n.14; Gregory, 843 F.2d at 120.  Therefore, Plaintiff's Section 1983 claim against Gramiccioni in his official capacity must be dismissed.

**b.      Title VII and NLJAD[10]**

Because all discrete acts that occurred prior to January 30, 2015 are not actionable, Defendants contend that Plaintiff has failed to state a claim under Title VII.  In particular, Defendants argue that the lone allegation that Plaintiff was not promoted in 2015 is insufficiently plead.[11]  Defendants further argue that Plaintiff fails to allege that "the [four] individuals promoted [in 2015] were less qualified or experienced than [Plaintiff] was, and given that an African

---

[10] Title VII and NJLAD apply the same standard for employment discrimination.  See Murphey v. Hous. Auth. and Urban Redev. Agency, 32 F. Supp. 2d 753, 763 (D.N.J. 1999).

[11] Defendants also argues that Plaintiff fails to specify on what date the MPCO failed to promote Plaintiff in 2015, and as such, it is impossible to determine whether that discrete act occurred prior to January 30, 2015.  For the purpose of this motion, however, the Court will assume that the 2015 discrete act is actionable, but directs that Plaintiff amend his Complaint to allege the specific date on which he was passed over for promotion in 2015, since that information is critical to determine whether Plaintiff's Title VII claim based on that act is time-barred.

American male was promoted at that time, plaintiff does not appear to be alleging that these promotions were racially discriminatory."  Defs.' Br. at pg. 21.

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2; see also Sarullo v. United States Postal Serv., 352 F.3d 789, 798 (3d Cir. N.J. 2003) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.") (internal quotation marks and citation omitted).  In order to state a claim for failure to promote, a plaintiff must allege that he or she is: "(1) a member of the protected class, (2) qualified for the position [he or] she sought; and (3) nonmembers of the protected class were treated more favorably."[12]  Williams v. Rohm & Haas Co., 90 Fed. Appx. 627, 628 (3d Cir. 2004) (alteration in the original) (internal quotation marks and citation omitted); see Jones v. School Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999); see also Royster v. New Jersey State Police, 439 N.J. Super. 554, 575-76 (App. Div. 2015).

In this matter, Plaintiff has alleged that he is a member of a protected class; he is an African American.  Compl., ¶ 3.  In addition, at this stage of the litigation, Plaintiff has sufficiently alleged that he was qualified to be a Detective Sergeant: (i) he holds a Bachelor's degree in political science with a concentration in criminal justice, as well as a Master of Administrative Science, id. at ¶ 7, he teaches in the Criminal Justice departments at two higher education institutions, id. at ¶ 9; (ii) he has alleged that he has received numerous awards throughout his career as a law

---

[12] On a motion for summary judgment, if a plaintiff establishes a prima facie case of employment discrimination under Title VII, the defendant is entitled to assert a legitimate business reason for the plaintiff's termination as part of the burden shifting paradigm under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, such an analysis is not appropriate on a motion to dismiss.

enforcement officer, id., and (iii) more importantly, he alleges that he worked as a law enforcement officer for fourteen years, and he has been a detective for more than a decade. Id. at ¶ 6. Indeed, Plaintiff has been working for the MPCO as a detective since 2006. Id. While he is presently a member of the Trial Support Unit, Plaintiff alleges that he has been assigned to the role of a training officer for less experienced law enforcement officers at the MPCO, which is a job responsibility often reserved for Detective Sergeants. Id. at ¶¶ 40-41, 43. These allegations, in the aggregate, are sufficient on this motion to show that Plaintiff was qualified for the position of Detective Sergeant. Finally, throughout his Complaint, Plaintiff has alleged that he was treated less favorably than his Caucasian counterparts in connection with promotions. For example, because he perceived there to be disparate treatment of African Americans in the promotion process, Plaintiff filed a formal complaint with the Director of Human Resources at the MPCO on May 29, 2015. See id. at ¶¶ 15-16, 24, 47. Shortly thereafter, Plaintiff alleges that the MPCO promoted three Caucasian male employees and one African American male employee to supervisory positions. Id. at ¶ 24. Contrary to Defendants' argument, according to Plaintiff, the promotion of the lone African American employee "was a smokescreen," i.e., an attempt to cover up years of discrimination based on race. Id. at ¶ 16. Accordingly, on this motion to dismiss, Plaintiff has adequately alleged a claim for failure to promote under both Title VII and the NJLAD against the MPCO.

In addition, as discussed supra, Plaintiff has conceded that his Title VII claim against Gramiccioni should be dismissed. However, I note that the NJLAD does impose individual liability under N.J.S.A. 10:5-12e. See Tarr v. Ciasulli, 181 N.J. 70, 82-83 (2004) (stating that, under the NJLAD, a supervisory employee may only be held liable if he 'aids and abets' the employer's unlawfully discriminatory conduct) (citing N.J.S.A. 10:5-12e); see also Ross-Tiggett

v. Reed Smith LLP, No. 15-8083, 2016 WL 4491633, at *7 (D.N.J. Aug. 25, 2016).  Because Defendants have not moved to dismiss Plaintiff's NJLAD claim against Gramiccioni, that claim is not being reviewed here and the claim remains.

**c.      Sections 1985 and 1986**

Although his allegations in connection with Sections 1985 and 1986 claims are scant, Plaintiff appears to allege that the MPCO, Gramiccioni and potentially other supervisors have entered into an agreement not to promote African Americans employees at the MPCO based on their race.  However, with respect to Plaintiff's claim under Section 1985, Defendants argue that Plaintiff has not alleged a conspiracy, nor are there any acts alleged in furtherance of a conspiracy. Defendants further argues that Plaintiff cannot state a claim under Section 1986 because there are no underlying violations under Section 1985.  The Court agrees.

42 U.S.C. § 1985(3) permits a litigant to bring an action to recover for injuries incurred by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).  To state a claim for civil conspiracy under Section 1985(3), a plaintiff must allege: (i) a conspiracy; (ii) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  See Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006); Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

In the instant matter, even under the most liberal construction, Plaintiff has failed to allege facts from which one could infer the existence of a conspiratorial agreement not to promote Plaintiff to the position of Detective Sergeant.  See Farber, 440 F.3d at 134.  Rather, Plaintiff has

simply alleged that Caucasians hold "all of the highest ranking positions," and that those individuals were responsible for the promotions that have served to discriminate against Plaintiff. See Compl., ¶¶ 27-28. These general allegations do not rise to the level of an agreement. See Campbell v. Gibb, No. 10-6584, 2012 WL 603204, at *9 (D.N.J. Feb. 21, 2012). Indeed, fatal to his claim, Plaintiff fails to allege that any individuals had an agreement to discriminate.[13] In addition, Plaintiff has failed to expressly identify the conspirators. Presumably, Plaintiff asserts his Section 1985 claim against the MPCO and Gramiccioni – the named Defendants, as well as other unnamed supervisors at the MPCO. However, Plaintiff cannot maintain a conspiracy claim against these actors because they are considered a single entity that cannot conspire with itself.[14] See Heffernan v. Hunter, 189 F.3d 405, 412 n.5 (3d Cir. 1999) (noting that the intracorporate conspiracy doctrine, which bars allegations of conspiracy between employees and the same organization, "has also been carried over to alleged conspiracies involving governmental entities."); see also Suber v. Guinta, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (stating that "a municipality and its officials are considered a single entity which cannot conspire with itself."); Broich v. Inc. Vill. of Southampton, 650 F. Supp. 2d 234, 246-47 (E.D.N.Y. 2009) (stating that the intracorporate conspiracy doctrine provides that "a corporation or public entity generally

---

[13] Tellingly, Plaintiff does not even mention the word "conspiracy" or "agreement" in his Complaint.

[14] However, there is an exception to that general rule: a plaintiff may maintain a Section 1985 claim against a person sued in his individual capacity where the "defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity." Broich, 650 F. Supp. 2d at 247 (internal quotation marks and citation omitted). Here, Plaintiff has failed to allege that Gramiccioni was motivated by his own personal, insidious bias or prejudice against Plaintiff and/or other African Americans. See id. Indeed, Plaintiff alleges that Gramiccioni "acted within the scope of his employment with [the MPCO]." Compl., ¶ 63. Thus, this narrow exception does not apply.

cannot conspire with its employees or agents as all are considered a single entity.") (internal quotation marks and citation omitted).  Accordingly, Plaintiff has failed to state a claim under Section 1985(3) against Defendants.

Furthermore, without a conspiracy adequately alleged, Plaintiff's claim under Section 1986 must also be dismissed because it is derivative of his claim under Section 1985(3).  See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994); see also Gary v. Pa. Human Relations Comm'n, 497 Fed. Appx. 223, 227 (3d Cir. 2012) ("Absent a valid § 1985(3) claim, [the] claim under 42 U.S.C. § 1986 [also] fails, as liability under that statute is predicated on actual knowledge of a § 1985 violation."); Koger v. Kaplan, Inc., 169 Fed. Appx. 682, 684 (3d Cir. 2006) ("Because a § 1986 claim is... dependent on a pre-existing violation of § 1985(3), that claim failed as well").

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part, denied in part as follows: (i) Plaintiff's claims against Defendants under 42 U.S.C. § 1981 are dismissed; (ii) Plaintiff's claim against Gramiccioni, in his official capacity, under 42 U.S.C. § 1983 is dismissed; (iii) Plaintiff's claims against Defendants under 42 U.S.C. § 1985 are dismissed; (iv) Plaintiff's claims against Defendants under 42 U.S.C. § 1986 are dismissed; and (v) Plaintiff's claim against Gramiccioni, in both his individual and official capacities, under Title VII is dismissed.  The following claims remain: (i) Plaintiff's claims against the MPCO and Gramiccioni, in his individual capacity, under 42 U.S.C. § 1983; (ii) Plaintiff's claim against the MPCO under Title VII; and (iii) Plaintiff's claims against Defendants under the NJLAD.

DATE: January 11, 2017                                    /s/ Freda L. Wolfson
                                                         The Honorable Freda L. Wolfson
                                                         United States District Judge